IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) NO. 3:14-cr-00080 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| | ) |
| ANTONIO E. SHANKLIN | ) |

# MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Compassionate Release (Doc. No. 62, "Motion"). Via the Motion, Defendant seeks a reduction of his 144-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like many other federal inmates in this district and around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to his specific health profile, satisfies the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release"[1] under Section 3582(c)(1)(A)(i), and that compassionate release is otherwise appropriate in his case. The Government has filed a response in opposition (Doc. No. 67, "Response"), arguing that Defendant's Motion should be denied because he has not shown that he is not a danger to the safety of other persons, and that other applicable considerations counsel strongly against compassionate release.

---

[1] Such motions are also known as ones for "sentence modification"; thus, the Court refers to both "compassionate release" and "sentence modification" throughout this opinion when referring to Defendant's requested relief. *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at n.2 (D. Utah Feb. 18, 2020) ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020).

BACKGROUND

On May 7, 2014, an Indictment was filed in this Court charging Defendant with six felonies: four counts of Possession with Intent to Distribute Crack Cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts One, Two, Three, and Five); Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count Four); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 841(a)(1) (Count Six). (Doc. No. 1). On August 31, 2015, Defendant pled guilty to Counts Five and Six of the Indictment pursuant to a binding plea agreement submitted under Federal Rule of Criminal Procedure 11(c)(1)(C), wherein the United States agreed to dismiss the other counts. (Doc. No. 38). Additionally, the agreed sentence was for 144 months—84 months on Count Five followed by 60 months consecutive on Count Six—in the custody of BOP, followed by 3 years of supervised release. (*Id*.).

The United States Sentencing Guidelines range for Defendant was 262 to 327 months. (Presentence Investigation Report ("PSR") at ¶ 8). On November 20, 2015, the Court accepted the binding plea agreement; and consistent with that agreement sentenced Defendant to serve 144 months of imprisonment followed by 3 years of supervised release. (Doc. No. 43). Defendant has been serving his sentence at FCI Forrest City (Arkansas). According to BOP, Defendant's release date is April 28, 2024. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Nov. 20, 2020).

LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Prior to 2018, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115-

391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act,[2] a district court *may* under certain circumstances grant a defendant's motion for compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, ---F. 3d---, No. 20-3701, 2020 WL 6817488, at *5 (6th Cir. Nov. 20, 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."). In order to grant such a defendant-filed motion, however, a court must find that the so-called "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." *See also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (explaining that a district court may not disregard the exhaustion requirements of Section 3582(c)(1)(A)).

Once it properly can act on a defendant-filed motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court next determines whether, in its discretion, to grant compassionate release to a defendant. In a recently issued opinion, the Sixth Circuit discussed the steps of the compassionate release analysis:

> The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).12 At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added). The Commission's policy

---

[2] That paragraph of Section 603 provides:

 (b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
    (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon* [*v. United States*], 560 U.S. [817,] 827 [(2010)]. At step three, "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

*Jones*, 2020 WL 6817488, at *6. The court then went on to resolve the following question with respect to defendant-filed motions (as opposed to compassionate-release motions filed BOP) in particular: "given the First Step Act's procedural reforms to compassionate release, is § 1B1.13 still an applicable—'that is, "relevant" or "appropriate,"' [*United States v. Ruffin*, 978 F.3d 1000, 1007–08]—policy statement for the purposes of the second § 3582(c)(1)(A) inquiry?" *Id*. The court noted that this is a question that has "sharply divided the courts," *id*. (citation omitted), as many district courts, including this Court, previously considered the Section 1B1.13 policy statements applicable when determining whether compassionate release was warranted. The court then chose a side, holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id*. (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).[3] Therefore, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

In other words, because § 1B1.13 is inapplicable to defendant-filed motions, a district court

---

[3] Prior to *Jones*, this Court treated § 1B1.13 as applicable to all motions for compassionate release, whether filed by BOP or by a defendant. The Court does not necessarily perceive that such treatment resulted in a resolution of any defendant-filed motions that was any different than the result the Court would have reached by treating § 1B1.13 as inapplicable to defendant-filed motions. But the Court does note that at least the analytical framework it used prior to *Jones* was different than the analytical framework it will use in the aftermath of *Jones*.

adjudicating such a motion is not bound by anything § 1B1.13 has to say about—including any limitations or requirements § 1B1.13 would impose upon—the finding of 'extraordinary and compelling reasons. But this rule is not the only consequence of the Sixth Circuit's decision on *Jones*. Another is that the district court, in adjudicating a defendant-filed motion, may disregard the requirement of § 1B1.13(2) that the court find the defendant not pose a danger (to any other person or to the community) in order to grant compassionate release.

If, in adjudicating a defendant-filed motion, a district court determines that extraordinary and compelling reasons for compassionate release exists, the court then determines whether compassionate release is warranted in light of the Section 3553(a) sentencing factors. *See Jones*, 2020 WL 6817488, at *9.[4] The sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
> i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
> ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—

---

[4] As suggested above, under *Jones*, the analysis of a defendant-filed motion differs from the analysis of a BOP-filed motion in that (among other ways) the latter kind of motion—to which § 1B1.13 remains applicable—requires an intermediate determination of whether the defendant-movant poses a danger to other persons or the community. *See* U.S.S.G. §1B1.13(2).

> A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
> B) [and in effect at the time of sentencing]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## ANALYSIS

### I. EXTRAORDINARY AND COMPELLING REASONS

In addressing the merits, the Court first must determine whether "extraordinary and compelling reasons" exist for Defendant's compassionate release. Defendant bears the burden to show that extraordinary and compelling reasons exist warranting his release. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling.").

In the Motion, Defendant relies on the prevailing COVID-19 pandemic and his medical conditions (*i.e.*, high blood pressure, obesity, and being "a chronic care patient due to the fact [he] was exposed to tuberculosis"). (Doc. No. 62 at 1-2). In Response, the Government argues that "Defendant has not provided any documentation for his asserted medical conditions and therefore cannot meet his burden to establish his entitlement to a sentence reduction on that ground alone." (Doc. No. 67 at 10 (citing *United States v. Lotts*, No. CR 08-1631 JAP, 2020 WL 835298, at *4 (D.N.M. Feb. 20, 2020))). However, the Government concedes that the Presentence Investigation Report and Defendant's medical records (which have been made part of the record by the Government (Doc. Nos. 70, 71)) reveal that Defendant is obese. (*Id.* at 11). And the Government further concedes that Defendant's obesity is an "'extraordinary and compelling reason' that may

warrant the Defendant's release." (*Id*. at 11-12). The Court need not decide whether Defendant has met his burden to demonstrate that extraordinary and compelling reasons exists, because the Court below decides that compassionate release is not available to Defendant even if he were able to demonstrate extraordinary and compelling reasons.

## II. SECTION 3553(a) FACTORS

Even assuming that Defendant is able to demonstrate that extraordinary and compelling reasons exist for compassionate release, the Court would still deny the Motion upon consideration of the Section 3553(a) factors, which collectively cut against granting compassionate release for Defendant.[5]

*The nature and circumstances of the offense* cut against compassionate release. During the instant offenses of conviction, Defendant possessed a firearm while he was in possession of distribution quantities of drugs. As this Court has noted before, the mix of firearms and narcotics is a particularly dangerous combination. *See United States v. Sanders*, No. 3:12-CR-00183, 2020 WL 6460224, at *7 (M.D. Tenn. Nov. 3, 2020) ("Defendant's underlying offense—possession of a firearm during a drug trafficking crime—involves the very dangerous mix of drugs and firearms."). Such a dangerous combination, in the Court's view, does not support a shortened sentence.

*The history and characteristics of Defendant and the need to protect the public from further crimes of Defendant* cut against compassionate release. The Government argues that Defendant would pose a danger to other persons and the community if he were released; therefore, the need

---

[5] *Jones* suggests that a district court has the discretion to assume *arguendo* that extraordinary and compelling reasons exist and then turn to the Section 3553(a) factors, inasmuch as *Jones* affirmed a district court that did exactly that. *See Jones*, 2020 WL 6817488, at *9 ("Thus, the district judge in Jones's case permissibly assumed for the sake of argument that extraordinary and compelling circumstances existed[.]").

to protect the public from further crimes of Defendant weighs against granting compassionate release. The Government asserts that "Defendant's conviction in this case represented the Defendant's fourth conviction for selling cocaine [and] there is nothing to suggest the Defendant would not return to drug dealing if released in this case." (Doc. No. 67 at 14). Additionally, the Government points to Defendant's "abysmal performance while on probation and parole." (*Id.*). Further, the Government also relies on Defendant's two prior convictions for violent offenses. The Government describes one such conviction as follows:

> In 2000, the Defendant was convicted of simple assault. (PSR, ¶ 42). In that case, an officer pulled the Defendant over for a traffic stop. (*Id.*) Although the Defendant initially stopped, he subsequently drove off and headed straight towards the officer who was standing at the end of the driver's side of the vehicle. (*Id.*) The officer jumped on the frame of the door to avoid being hit. (*Id.*) Later, another officer observed the defendant drive towards two bystanders at a high rate of speed, almost striking them. (*Id.*) The Defendant lost control of his vehicle and then fled on foot.

(*Id.* at 14-15). The Government also asserts that Defendant was convicted of simple battery in 2007, but the Government does not have any details regarding that conviction. (*Id.* at 15).

The Court finds that the history and characteristics of Defendant, and the need to protect the public, weigh against granting compassionate release under these factual circumstances. *See Jones*, 2020 WL 2020 WL 6817488, at *9-10 (explaining that the district court must supply specific factual reasons in its consideration of the Section 3553(a) factors). The Court does not presume this merely because Defendant is currently incarcerated for a serious (though non-violent) offense. The inquiry is more comprehensive than that, involving most significantly a review of Defendant's entire criminal history. Although Defendant was only 36 years old when he was sentenced, he had a Criminal History Category of VI. (PSR at ¶ 8). As the Government points out, Defendant's criminal history includes several narcotics offenses similar to the instant offenses, in addition to two violent offenses. (*See id.* at ¶¶ 41, 46, 48, 49). Combined with his current offenses,

this criminal record prevents the Court from concluding that Defendant would not pose a danger to the community if released. *See United States v. Holder*, No. 1:18CR0609, 2020 WL 4570524, at *3 (N.D. Ohio Aug. 7, 2020) (concluding that the defendant posed a danger to the community based on his criminal history, which included two felony drug trafficking offenses).

Additionally, a review of the PSR reveals numerous probation and parole violations. *See* PSR at ¶ 39 (noting that on three occasions in 2000, community corrections violations were found after the defendant failed to pay court costs, failed to report to his probation officer, and sustained another arrest); *id.* at ¶ 41 ("On June 29, 2003, a parole violation warrant was issued [and the violation later sustained] after the defendant sustained a new arrest.") *id.* at ¶ 44 (noting that on three occasions in 2007, probation violations were found after the defendant admitted to using marijuana while on probation, failed to report to his probation officer, failed to provide proof of attending a substance abuse program, and sustained a new arrest); *id.* at ¶ 46 (noting that on two occasions in 2009, probation violations were found after he failed to attend a substance abuse program and failed to pay court costs and fines); *id.* at ¶ 48 ("On September 6, 2013, a community corrections violation warrant was issued [and the violations sustained] after the defendant sustained a new arrest and submitted a urine sample which tested positive for marijuana and cocaine."). This litany of probation violations unfortunately suggests that Defendant perhaps would not limit the danger he poses to the public by abiding by his conditions of supervised release.

Ultimately, Defendant's criminal record and continuous inability prior to the instant offenses to correct his criminal behavior demonstrate his repeated disrespect for the law and a substantial possibility (though admittedly, and fortunately, not a certainty) of recidivism. Accordingly, the Court concludes that this factor weighs against granting compassionate release.

Moreover, it is relevant to this particular factor (and presumably the next factor below) that, as the Government notes, Defendant's condition has been managed while in prison and BOP has been taking efforts (imperfect though they may be) to control the spread of COVID-19. *See Ruffin*, 2020 WL 6268582, at *8 (affirming district court's denial of motion for compassionate release for an inmate-defendant with serious medical conditions, in part because he "was receiving regular medical treatment to manage those conditions" and "the prison had adopted sufficient preventive measures to slow the spread" of COVID-19").

*The need to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner* likewise does not cut in favor of compassionate release for Defendant. The Court will first focus on Defendant's need for medical care.

The Court will not act like it knows the extent to which Defendant's chances of COVID-19 infection would be lower if he is released than if he stays in BOP custody, or how much more likely a bad outcome upon infection would be for him as opposed to someone with a more typical medical profile. As matter of sheer epistemology, the undersigned cannot and does not know such things; this is true despite publicly available information from medical experts and public health officials, inasmuch as they do not always agree with one another on issues related to COVID-19 and inasmuch as some seem to have reversed themselves on various issues over time.[6] In short, information and opinions regarding the prevalence of, effect of, and optimal countermeasures to COVID-19 have been in constant flux, and it would be folly for the Court to rely blindly on any

---

[6] It seems clear to the undersigned that certain public health authorities, public health officials, and other public officials over time have equivocated regarding, or even starkly changed, their views concerning one or more of numerous issues, including but not limited to: whether COVID-19 can be transmitted person to person; whether persons should avoid crowds and/or otherwise alter their daily regimen due to the presence of COVID-19 in the United States; the likely death toll and mortality rate from COVID-19; whether masks/face coverings should be worn; and the extent to which COVID-19 may be transmitted via contact with inanimate surfaces.

particular opinion or factual assertion merely because it comes from a purportedly knowledgeable or reputable source.

Having said that, the Court is willing to accept that Defendant is at substantial risk of COVID-19 infection at FCI Forrest City, as there are currently 28 active COVID-19 cases in the facility. *See COVID-19*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed Nov. 20, 2020). The Court is also willing to assume that Defendant's medical conditions make him prone to relatively bad outcomes in case of infection.

But that does not mean that these circumstances ultimately support compassionate release. For one thing, the Court would merely be speculating as to the extent of the risk of infection at FCI Forrest City and as to the likelihood of a bad outcome upon infection. For another thing, to say the least, it is not like there in no substantial risk of infection outside of BOP custody—COVID-19 cases continue to rise across the United States. *See Covid in the U.S.: Latest Map and Case Count*, The New York Times, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last accessed Nov. 20, 2020) ("Over the past week, there has been an average of 166,272 cases per day [in the United States], an increase of 73 percent from the average two weeks earlier."). And as is also a matter of public record (and undeniable truth in the undersigned's personal experience), these cases have accrued despite substantial steps by both individuals and government authorities to keep the infection rate down.

Additionally, given Defendant's history of criminal activity and probation violations, Defendant has demonstrated an unwillingness and/or inability to comply with rules and societal norms in at least some important respects. This is vital because decreasing his risk of infection upon release from BOP custody would require him to observe public/health and societal norms related to COVID-19, such as handwashing, face-covering and social distancing. For all of these

reasons, there is no good basis to believe that Defendant's release is likely *in actuality*—not just theory—to substantially reduce his risk from COVID-19.

*The sentencing guidelines* do not support compassionate release. Defendant was sentenced to a below-guidelines sentence. As noted above, the revised sentence requested by Defendant (approximately 84 month) would amount to an even greater (much greater) downward variance from the guideline range than the major one (*i.e.*, from 262 months to 144 months) Defendant already received at sentencing.

*The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct* also cuts against Defendant. The sentence Defendant now seeks would result in a disparately low sentence compared to defendants convicted of similar conduct with similar criminal history. As noted above, the guidelines range for Defendant was 262 to 327 months. (PSR at 34). The Court accepted the binding plea agreement; and the Court sentenced Defendant to serve 144 months of imprisonment, a below guidelines range sentence, as noted above. Notably, having himself agreed that 144 months was the appropriate sentence in his case, Defendant can hardly deny that a sentence substantially under 144 months generally would be inappropriately low in his case—which suggests that his requested reduced sentence also poses a risk of an unwarranted sentencing disparity.

And according to the Government, which does not appear to have understated how much time has been credited to his federal sentence, Defendant has served only roughly (just under) 84 months of that below-guidelines range sentence. The revised sentence requested by Defendant, therefore, would amount to a significant reduction from a sentence that already incorporated a major variance. This would represent an especially large variance from his guideline sentence, and this fact may weigh against his release. *See United States v. Kincaid*, 805 F. App'x 394, 395-96

(6th Cir. 2020) (holding that it is appropriate for district courts to consider the percentage of the overall sentence left to be served when addressing compassionate release motions); *Ruffin*, 2020 WL 6268562, at *7 (affirming district court's denial of motion for compassionate release, in part because the defendant-inmate "has yet to serve even half of his 25-year sentence" and because "the court had already varied downward" by one-sixth the bottom of the guideline range). Additionally, at sentencing Defendant faced a mandatory minimum of 120 months, based on the application of the statutory mandatory minimum and consecutive sentences on Counts Five and Six. Thus, his time served is still materially short of even the mandatory minimum sentence (even as such minimum would be reduced based upon credit for good time served).

Although the guidelines of course are advisory only, and there is nothing wrong with below-guidelines in general, the Court can (and in this instance does) treat such a large requested variance as tending to frustrate the objective of avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. The Court also notes that the fact that Defendant has served nowhere near all (though admittedly a substantial amount) of his (below-guideline) sentence can weigh against Defendant not only on this factor, but also on other factors. *Id.* ("We have recognized that some of the § 3553(a) factors, including the "need to provide just punishment" and "to reflect the seriousness of the offense," allow courts to consider the "amount of time" that a defendant has served on a sentence when deciding whether to grant a sentence reduction."); *see also Jones*, 2020 WL 6817488, at *12 (affirming the district court's denial of the defendant's compassionate release motion where the district court examined the Section 3553(a) factors and reasoned that the factors weighed against granting the motion because, among other things, the defendant "had served only two years of his decade-long sentence [for non-violent drug offenses] and that [the defendant] was a repeat offender").

Accordingly, the Court finds that to grant Defendant compassionate release would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. Additionally, a reduction of the Court's original sentence would also fail to reflect the seriousness of the offense Defendant committed and would not provide a just punishment for his conduct. It would also undermine the Court's attempt to use the sentence to promote respect for the law and serve as a deterrent for criminal conduct.

For those reasons, the Court finds that the Section 3553(a) factors weigh in favor of denying Defendant's Motion.

## CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that it would be inappropriate, considering the Section 3553(a) factors.

For these reasons, the Motion (Doc. No. 62) is **DENIED**.

IT IS SO ORDERED.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE